UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| STEPHEN SVENDSEN, | Case No. 16-CV-0583 (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| G4S SECURE SOLUTIONS (USA) INC., | |
| Defendant. | |

Wyatt S. Partridge and Lisa Lamm Bachman, FOLEY & MANSFIELD, PLLP, for plaintiff.

Toni Read, LEWIS BRISBOIS BISGAARD & SMITH LLP; and Jacalyn N. Chinander, MEAGHER & GEER, PLLP; for defendant.

Plaintiff Stephen Svendsen brought this defamation action against his former employer, defendant G4S Secure Solutions (USA) Inc. ("G4S"). Svendsen claims that G4S defamed him in two separate emails that it sent to his union—one on May 5, 2014, and the other on July 30, 2014. *See* ECF No. 1-3 at 57-68, 82-85. This matter is before the Court on Svendsen's objection to Magistrate Judge Franklin L. Noel's Report and Recommendation ("R&R") of January 19, 2017.[1] Judge Noel recommends granting G4S's motion to dismiss Svendsen's complaint on the grounds that Svendsen's claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See* ECF Nos. 44, 45. The Court held a hearing on Svendsen's objections on

---

[1] The R&R is dated January 18, 2017, but it was not entered until January 19, 2017.

June 6, 2017.  Based on that hearing, and based on a de novo review of the record, the Court sustains Svendsen's objection, declines to adopt the R&R, and denies G4S's motion to dismiss.

G4S's argument for dismissal is simple:  When it files its answer to Svendsen's amended complaint,[2] G4S will assert the defense that both of its emails were absolutely privileged because they were sent to Svendsen's union and pertained to a formal grievance filed by Svendsen after he was indefinitely suspended by G4S on March 31, 2014.  According to G4S, the Court will not be able to rule on the merits of its privilege defense without interpreting the terms of the collective-bargaining agreement ("CBA") between G4S and the union.  Thus, says G4S, Svendsen's defamation claims must be dismissed as preempted under § 301 of the LMRA.

G4S's argument is grounded on a solid legal foundation:

---

[2]Svendsen's original complaint was filed pro se in state court on February 16, 2016.  ECF No. 1-1 ¶ 1, at 3.  After G4S removed the case to this Court, Wyatt S. Partridge and Lisa M. Lamm Bachman of the law firm of Foley & Mansfield, PLLP, agreed to represent Svendsen after being contacted by the Pro Se Project.  ECF No. 20.  (The Pro Se Project is "a partnership between the United States District Court for the District of Minnesota and the Minnesota Chapter of the [Federal Bar Association]" that is intended "to increase access to the federal court system while at the same time addressing the unique challenges of *pro se* litigation."  *Rickmyer v. ABM Sec. Servs., Inc.*, No. 15-CV-4221 (JRT/FLN), 2016 WL 1248677, at *5 (D. Minn. Mar. 29, 2016).)  With the help of his new attorneys, Svendsen filed an amended complaint on October 28, 2016.  ECF No. 34.  The Court expresses its appreciation to Partridge and Lamm for volunteering to assist Svendsen in this matter.

First, G4S is correct that a state-law claim must be dismissed as preempted by § 301 "when resolution of [that] state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). If determining whether G4S is liable to Svendsen would require this Court to "interpret any term of a collective-bargaining agreement," this Court must dismiss Svensen's defamation claims as preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). At the same time, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Lueck*, 471 U.S. at 211. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Needless to say, the line between "interpreting" a CBA and "consulting" a CBA can be difficult to discern.

Second, although the Eighth Circuit has two directly conflicting lines of authority on the question, the line that began earlier—and therefore must be followed[3]—holds that

> the defenses, as well as claims, must be considered in determining whether resolution of the state law claims requires construing the collective bargaining agreement. . . . Should affirmative defenses attempt to implicate the collective bargaining agreement, the district court should carefully analyze whether in actuality construction or interpretation of the collective bargaining agreement is required in considering such defenses.

*Hanks v. Gen. Motors Corp.*, 859 F.2d 67, 70 (8th Cir. 1988); *see also Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 623 (8th Cir. 1989) (same); *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 360 n.4 (8th Cir. 1996) (same). But see *Bogan v. Gen. Motors Corp.*, 500 F.3d 828, 833 (8th Cir. 2007) (asserting that "an approach where the employer's defenses are relevant" was rejected in *Meyer v. Schnucks Markets, Inc.*, 163 F.3d 1048, 1050-51 (8th Cir. 1998), and choosing to follow *Meyer* rather than *Hanks*, *Johnson*, and *Luecke*); *Williams v. Nat'l Football League*, 582 F.3d 863, 879 & n.13 (8th Cir. 2009) (acknowledging "the conflict in our precedent with regard to the section 301 preemption" and opting to follow *Bogan* and *Meyer* instead of *Hanks*, *Johnson*, and *Luecke*).

---

[3]*See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) ("We definitively rule today, in accordance with the almost universal practice in other federal circuits that when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" (citation omitted) (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006))).

And finally, virtually every federal court to address the issue has recognized an absolute privilege for statements made by an employer to a union during a grievance process. *See, e.g.*, *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988); *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, 277-79 (10th Cir. 1981); *Rovai-Pickett v. HMS Host, Inc.*, No. C-08-1625, 2008 WL 3977706, at *2 (N.D. Cal. Aug. 26, 2008); *Harrigan v. Caneel Bay, Inc.*, 745 F. Supp. 1122, 1130 (D.V.I. 1990); *Green v. Hughes Aircraft Co.*, 630 F. Supp. 423, 427-28 (S.D. Cal. 1985); *Brooks v. Solomon Co.*, 542 F. Supp. 1229, 1233-34 (N.D. Ala. 1982). This privilege applies to statements made during an arbitration hearing or "during the investigative phases of the process leading up to" such a hearing. *Cross v. Safeway, Inc.*, No. CIV. 03-132-TC, 2004 WL 1969407, at *4 (D. Or. Sept. 2, 2004), *report and recommendation adopted*, 2004 WL 2203257, at *1 (Sept. 24, 2004). It also applies to statements made after the arbitration hearing, if the statements are made "in the context of the ongoing resolution of a grievance." *Id.*; *cf. Mike v. Ron Saxon Ford, Inc.*, 960 F. Supp. 1395, 1398-99 (D. Minn. 1997) (refusing to apply the privilege to statements made "*before* any grievance existed").

At first glance, G4S's May 5 email appears to fall within the scope of this privilege. Svendsen was indefinitely suspended on March 31, 2014. ECF No. 41 at 2; *cf.* ECF No. 34 ¶ 31. He filed a grievance complaining about his suspension on or before April 10 or April 14, 2014. *See* ECF No. 45 at 7 (using the April 10 date); ECF No. 41

at 7-8 (using the April 14 date).[4]  In response, G4S set up a meeting with Svendsen's union to discuss Svendsen's grievance.  Three days before the meeting, G4S sent Svendsen's union the May 5 email detailing the results of its investigation into the circumstances leading up to Svendsen's suspension.  ECF No. 34 ¶¶ 32, 37.  This email, then, appears to have been sent to Svendsen's union "during the course of the grievance process," *Harrigan*, 745 F. Supp. at 1130, and "in an attempt to [resolve] the grievance," *Hebert v. Post Mach. Co.*, 495 F. Supp. 285, 286 (D.N.H. 1980).

In response, Svendsen makes several arguments.

First, Svendsen argues that the May 5 email was not "required by" the CBA.  ECF No. 45 at 7.  Even if this were true, however, this would not defeat the privilege.  An email does not have to be *required* by the CBA in order to be privileged.  Rather, it is sufficient that the email be made "during the course of the grievance process," *Harrigan*, 745 F. Supp. at 1130, or "in an attempt to [resolve] the grievance," *Hebert*, 495 F. Supp. at 286.  G4S's May 5 email appears to fits that bill.

Second, Svendsen argues that the May 5 email was not privileged because it was untimely.  According to Svendsen, G4S sent its May 5 email to Svendsen's union more than 10 business days after Svendsen filed his grievance.  *See* ECF No. 45 at 6-7.  Thus,

---

[4]The April 14 date is probably more accurate because the collective-bargaining agreement gives employees ten *business* days to file a grievance after the grievance arises.  ECF No. 8-1 at 17.  Ten *business* days after March 31, 2014, would have been April 14, 2014, not April 10, 2014.

Svendsen says, G4S's email was not sent within the time frame contemplated by the CBA. *See* ECF No. 8-1 at 17 (giving G4S 10 business days after an employee files a grievance "to respond to the Union in writing"). But the fact that an email submitted during the course of a grievance process might have been *tardy* does not mean that it was not filed *in the course of a grievance process*—just as, say, the fact that a reply brief is filed a couple days late does not mean that it is not a reply brief. The untimeliness of a communication might be *relevant* to whether that communication related to a grievance, but that untimeliness is certainly not *determinative* of the issue.

Finally, Svendsen argues that the May 5 email—or, to be precise, the allegedly defamatory statements included in that email—were not sufficiently related to his grievance to be covered by the absolute privilege. *See* ECF No. 41 at 9-10; ECF No. 45 at 11-12. Here Svendsen may be on to something, as statements that have nothing to do with a pending grievance may indeed fall outside the scope of the absolute privilege. The problem is that, based on the present record, the Court cannot determine whether and to what extent the May 5 email related to Svendsen's grievance. The record is extremely scanty; indeed, Svendsen's grievance—which is the centerpiece of the parties' present dispute—does not appear in the record, nor is it described in any detail in Svendsen's amended complaint. *Cf.* ECF No. 34 ¶ 37 (merely noting that "a Union

grievance meeting was held to address Svendsen's complaints concerning his suspension").

Given the state of the record, the Court cannot now determine whether the May 5 email was absolutely privileged—nor can the Court determine whether it will have to interpret a provision of the CBA in deciding whether the May 5 email was absolutely privileged. A final determination of both issues will have to await the development of a full record.

Much the same can be said regarding the July 30 email. For the reasons discussed at the hearing on Svendsen's objection to the R&R—including the fact that the July 30 email was sent many *weeks* after Svendsen's grievance was allegedly settled— the Court finds that the present record does not allow the Court to decide (1) whether G4S's July 30 email was absolutely privileged or (2) whether resolution of G4S's privilege defense would require the Court to interpret a disputed provision of the CBA. Among other things, the record does not make clear whether G4S sent its July 30 email in response to Svendsen's grievance, in response to Svendsen's unfair-labor-practices charge, in response to both, or in response to neither.[5]

---

[5]G4S has made inconsistent assertions about the purpose of the July 30 email in litigating its motion to dismiss. *Compare* ECF No. 39 at 6 (characterizing the May 5 and July 30 emails as having been "prepared and distributed by Defendant to Plaintiff's Union *in the context of the grievance proceedings*" and saying nothing about Svendsen's unfair-labor-practices charge), *with* ECF No. 46 at 5 (characterizing the May 5 and
(continued...)

For these reasons, the Court sustains Svendsen's objection, declines to adopt the R&R, and denies G4S's motion to dismiss Svendsen's amended complaint. After the parties have completed discovery and developed a full record, G4S may move for summary judgment on the basis of § 301 preemption, the absolute privilege, or any other ground available to it.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court SUSTAINS Svendsen's objection [ECF No. 45] and DECLINES TO ADOPT the January 19, 2017 R&R [ECF No. 44]. IT IS HEREBY ORDERED that G4S's motion to dismiss [ECF No. 37] is DENIED.

Dated: June 14, 2017        s/Patrick J. Schiltz
                            Patrick J. Schiltz
                            United States District Judge

---

[5](...continued)
July 30 emails as having been "prepared and distributed by Defendant to Plaintiff's Union in the context of the grievance proceedings . . . *and as a result of a ULP charge filed by Plaintiff*") (emphasis added in both instances). G4S has not cited any authority suggesting that an absolute privilege protects communications from an employer to a union regarding an unfair-labor-practices charge filed by an employee.